When this case was formerly before the Court, ante, 58, a question was stated to have arisen whether the land, taken, under the construction given to the will, by the children of Mr. and Mrs. Kron, was to bear any portion of the legacies with the personalty. That question has been since argued and the subject deliberately considered by each member of (425) the Court, and the result of our deliberation and consultation is that, in the opinion of a majority of the Court, the different parts of the fund, given or attempted to be given to the Forestiers, must contribute towards the pecuniary legacies (except those given to aliens) in proportion to the values of the real and personal parts respectively.
The natural justice of that rule seems to be obvious, and we believe the authorities are not in opposition to it. The testator gives the whole residue of his estate, of every kind, to certain favorite relations, and upon a particular event he gives the same residue to others of his relations; declaring, however, that the fund in the hands of each class of the donees should be subject to his pecuniary legacies. It has happened that neither disposition has taken effect as the testator intended, and doubtless expected, for the primary donees take the personal portion of the fund, but as they could not hold the real portion of it, that goes to the substituted class of donees. It would be shocking if the primary objects of the testator's bounty should not only lose *Page 313 
that part of the fund which the law, upon a principle of policy, will not allow them to hold, but should also, in effect, be deprived of that part of which the gift was valid, by having thrown on it all that was charged upon the whole fund. Upon that ground it was contended on behalf of the alien donees that, as the favorites of the testator, they should keep the personalty, exempt from legacies, until the land should be exhausted.
But we are not at liberty to go that length, although it can hardly be doubted, if the testator had been asked how the legacies should be raised in the event which happened, that he would have said, "Out of the land, for I did not mean the Krons to take anything which the Forestiers could, but that the latter should have all my estate except the sums of money I have given away in the previous parts of my will." But it must be admitted that intention, however naturally to be inferred from the circumstances, cannot be carried into effect for the want of words from the testator himself making the land the primary fund for this purpose. Neither can this be done by marshalling, (426) that is to say, by throwing the legacies on the realty, for that would be to give the aliens indirectly the benefit of a devise of the land which they could not take directly, or, at least, hold. That is the rule in England with respect to a bequest to a charity of money charged on both real and personal estate. The courts do not marshall by throwing the debts on the land and leaving the personalty for the charity. Mogg v.Hodges, 2 Ves., 52; Makeham v. Hooper, 4 Bro. C. C., 152. The same principle must apply to a gift of the like kind to an alien. But although the realty is not, as far as it will go, to bear the whole charge, yet it does not follow that it shall not answer for some part; and if so, then it is to be inquired, what part? It has been contended for those that get the land that it is to pay nothing because the personal estate is the primary fund for the payment of legacies, and a mere charge on the land, however explicit, will not place the land in front of the personalty nor subject it to contribution. Neither branch of the proposition is controverted, but each is fully admitted. On the other hand, it is undeniable that it is in the power of a testator to make those different portions of his estate pay his legacies in any order or proportions which to him may seem meet. The question upon each will is, whether that testator intended to charge the realty in aid of the personalty, or before it, or as contributory. Cases of both the former kinds are frequent in the books, where the one kind of estate goes to one set of persons and the other to another set, and though they are not all reconcilable, yet at this day it is not difficult in most cases to determine *Page 314 
whether the land is charged as the primary or the subsidiary fund. But we do not find many cases in which the two kinds of estate have been held to contribute. Some such there are, however, and they seem to turn, not so much upon the actual intention of the testator that there should be contribution between the realty and personalty, as such, as upon the application of a principle of natural justice and a rule of equity to a case which was not foreseen by the testator, and about which (427) he had, therefore, no particular or precise intention, but only a general intention, which, to be carried into effect, requires contribution.
Such a general intention is to be respected as governing the construction of the will, and to it a particular inconsistent intention must yield. Much more must the general interest govern when there is no particular intent one way or the other. When the personalty and realty are given to different persons, and the latter is charged, and merely charged with legacies, it is as clear that the two funds do not contribute towards the legacies as that the real is not the primary fund for their payment. In such cases there are not only two funds, in the sense that the estates composing them are different in their nature, but also in the sense that they are not given together, but severally and to different persons, and severally charged. In every mode of speaking of them they are two funds, as well for the purposes of raising a charge as any other. But when realty, or the proceeds of realty, and personalty are given together to the same person or persons charged with legacies the several parts have been held liable to the charge pro rata according to their respective values. In Roberts v. Walker, 1 Russ. and Myl., 752, the master of the rolls said that when a testator creates a mixed and general fund from real and personal estate and directs that fund to be applied to the payment of debts and legacies, the realty and personalty must contribute pro rata, and as in that case there was no disposition of the fund after the payment of the debts and legacies, the next of kin took what was left of the personalty and the heir did the same with respect to the realty. It seems not to have been always so understood. Howze v. Chapman, 4 Ves., 452;Paice v. Archbishop of Canterbury, 14 Ves., 364. For, as was observed in Roberts v. Walker, the attention of the Court was not before distinctly called to it in any of the numerous cases in which the facts would have raised the question. But this rule of contribution has been established and is now considered perfectly settled in reference to the gift to a charity of a mixed fund charged with legacies. Attorney-General v. Earl of
(428) Winchelsea, 3 Bro. C. C., 381; Croslin v. Mayor of *Page 315 Liverpool, 1 Russ. and Myl., 761; West v. Shuttleworth, Shuford on Mortmain, 237. And precisely the same rule has been applied to a devise of real and personal estate to an alien. Fourdrinv. Gowdey, 3 M. K., 383. In those cases the gifts to the charity and to the alien failed, so far as they consisted of realty, and the heir of course took that part, but he took subject to his just ratio of the encumbrance. It is true there were directions there to sell the real estate, and the proceeds were given and blended with the personalty so as to make one fund, and it has thence been thought that the decisions turned on that circumstance. It is probable that a case of that kind, as the more striking, would be more likely to give rise to the rule than a gift of realty, specifically, in conjunction with personalty, and unconverted to any purpose except so far as the charge itself might have that effect. A direction for a sale, though it be but a conversion to the extent of the purposes to which the money is legitimately applicable, denotes that, as to those purposes, the money arising from the realty, being mingled with the personalty, was intended to be applied with the personalty, and therefore to be liable with it. But that does not seem in reason to flow from the direction, singly, to sell the realty as thereby making it and the personalty one fund, for they are in truth not one fund in the sense of the real estate being turned into personal estate, for then it would not come back to the heir, whereas the cases cited and many others show that the heir takes the money as land not disposed of. That is only one example of the mode of creating such a mixed and single fund. The real ground of the rule must be that the testator gives the whole, whether consisting of the produce of realty or personalty or of the realty itself and personalty, as one fund, charged with the legacies, and as the charge is upon that one fund, if it should chance afterwards to become severed neither portion becomes exonerated of the charge, but each must bear its aliquot share. But is a sale of the realty necessary to the composition of this one fund, as it is called, in reference to the charging of legacies on it? We see not why that denomination may not as truly be (429) given to it when the realty and personalty are charged together with the legacies and also given together to the same person or persons, and yet more when they are given over, or rather in the alternative, together once more. Such is our case. When personalty and realty are given separately to different persons a charge upon the realty does not change its liability, for there is no intention presumable that the two should bear the burden pari passu or in any manner different from the order in which the law makes personal and real estate liable. But *Page 316 
when the testator gives to the same person realty and personalty in mass, as the residue of his estate of both kinds together, expressly charged with legacies, can a reason be conceived — one at least founded on sense and principle — why he should intend that either estate should be applied to the charge, first or last? To the donee of the fund it cannot be material out of which part of it the money is to be raised; therefore, his interest is not at all concerned to produce an intention either way in the breast of the testator. On the other hand, there is a reason why he for whose benefit the charge was created should not be restricted to this or that part of the fund, but allowed to raise it out of any part which he can most conveniently get at. The reason is that he cannot know the state of the different parts of the fund, while the other party is in possession of perfect knowledge upon those points and has the control of the whole, and can pay out of any part he chooses; and it is his duty to pay promptly out of the one or the other, and not to embarrass the legatee as to the source from which he is to receive his money. Intending him to be thus paid at all events, the testator charged the whole fund, though consisting of several things; and the whole being in the same hands, the inference is very strong that the testator charged it as a whole, or, at least, each and every part of it alike. Had the gift to the Forestiers proved good throughout would not a bill have laid for the satisfaction of the legacies, without taking an account of the two estates separately? Would they have been permitted to interpose such an impediment (430) to the speedy redress of the legatees? We should have said to them, to what purpose, cui bono, is such an account to be taken under the directions of the Court? The legatee is entitled to his legacy at all events — and from you, in respect of the gift to you of the property charged therewith. The whole fund is in your hands, and if, as you say, there be personalty applicable to the legacy, there is nothing to hinder you from applying it to that purpose; and if you will not, the money shall be raised from the land which is visible and accessible and likewise charged. As the Court would act in such a case, so the testator thought in making the disposition. He did not contemplate the donation, as comprising different things, to be liable to the charge in succession or in different proportions. He could have no motive for framing a scheme of that sort. He, in fact, meant the donees of the things charged to pay the legacy, and as a security therefor he charged the combined fund as a whole, inasmuch as it all belonged to the same persons. In this sense the fund may be called a "mixed fund," or "one fund," as appropriately as if it were compounded of the proceeds of *Page 317 
realty and personalty. In Bench v. Biles, 4 Madd., 187, those terms were applicable to a fund of this character. The testator there gave all his real and personal estates to his wife for life, and after her death gave various legacies, and all the residue and remainder of his real and personal estates to his nephews. The question was whether the legacies were charged on the real estate. In deciding it Sir John Leach said : "It is truly stated that legacies form no charge on the real estate, to affect the heir or devisee, unless the testator has shown a manifest intention to that effect. The testator here gives all his real and personal estate to his wife for life, blending them together for her use. And he plainly continues, after her death, to treat them as onefund; the rest, residue and remainder of which, after payment of legacies, is to go to the nephews." And the decree was as prayed for. It is true the question there was whether the land was charged, as to which the case at bar admits of no doubt, as the will is express in two places. But the reason why the Court then held the land to be charged is the point material (431) to us at present. That was, that although, the proceeds of land were not given, but the land itself, yet it and the personalty formed "one fund," because they were given together to the same persons, subject to one and the same charge. There was no question raised as to the order in which the land should be liable at all, because, as we suppose, the point was immaterial. Hence, without inquiring whether the personal estate was exhausted, there was a declaration at once that the legacy was charged on the land as well as the personal estate, and, no doubt, a decree that it should be raised forthwith out of either or both, for the reason that the two estates were "blended" by the testator, who in so doing treated them as "one fund." Similar phrases, "lands combined, mixed up and treated as one fund with personalty," are applied to similar cases and for the like purposes in Edgell v. Haywood, 3 Atk., 352, and Cole v. Turner, 4 Russ., 374. If, then, the gift of the realty to the Forestiers had been good as well as that of the personalty, there would have been, in a suit against them, no distinction between the different parts of the fund as to the order of liability, but the legacies would have been raised as well out of the one part as the other. Upon the failing, however, of the gift of the realty to them and its going to another, is it to become discharged or is the order or extent of its liability to be altered? Why should that be? There is certainly no intention of the testator to that effect discoverable. Indeed, he cannot be supposed to have had in view the failure of his gift to any extent, for a testator always conceives his dispositions to be effectual, however he may be *Page 318 
mistaken. He had, then, no intention applicable to the case which has happened, as to the order or proportions in which the different parts of this fund should answer the common charge upon the whole. Consequently the charge, which was once well constituted, continues, and the heir, who would take if there were no gift substituted in the will for that which did not take effect, would take cum onere. But as the two parts of the fund, though not contemplated by the testator, are thus to go (432) into different hands, there arises an equity among those several owners, as between themselves, upon which the burden must be apportioned, since it is not just that either, by the contrivance of the other or the caprice of the creditor, should have the whole sum raised out of his part of what was once the common or consolidated fund. That equity is equality which apportions the charge according to the relative value of the respective parts. Such was the rule in the cases of the charities and the alien before quoted, in which the heir, or the sovereign as standing in the place of the heir, took the fund illegally given. But this case is, if possible, stronger than that of an heir. The gift here is of the whole residue, expressly declared to be composed of realty and personalty, to the Forestiers in the first instance, upon the condition of their applying for it, and upon the contingency of their not doing so, then there is a gift of the very same corpus to the relations in this country, "subject, however," the testator carefully repeats, "to the legacies herein mentioned." The substituted donees are thus, according to the views entertained by the testator, to succeed to the whole fund precisely as those would who were to take first, and subject to the same charges. It turns out that each class of the donees get a part and only a part of their donations, and if the testator can be supposed to have had any intention respecting such a case, it must be presumed that he did not mean the substitutes to defeat the primary objects of his bounty by keeping to themselves their part free of charge and throwing the whole burden on what was left to those who were intended to be preferred before them. But it is the more probable conjecture that the testator did not foresee any such partial efficacy and partial failure of his dispositions, and therefore that he had no precise intention respecting this question, but only the general intention that all the fund and every part of it should be chargeable to the legatees, thus imposing the duty on the Court of apportioning the charge, according to the actual state of the fund, amongst its disjointed members. That duty is performed, according to the maxim of the Court, by an apportionment (433) pro rata, according to their relative value. But when *Page 319 
charges on the joint fund are thus apportioned, it must be understood only of those which may lawfully be charged on the land. A legacy to a charity or an alien, charged on land, is void as a charge on the land, and sinks for the benefit of the heir or devisee and inures for that of the sovereign, who takes by escheat. Jackson v. Sutton Hurlock, Amb., 487;Wright v. Role, 1 Bro. C. C., 60; Fourdrin v. Gowdey, 3 M. K., 383. Consequently the annuity to Mrs. Quenet and Mrs. Forestier, which will continue during their joint lives and the life of the survivor, and that to Francis Augustus De la Mothe also, if he was not qualified to hold real estate at the death of the testator, are in effect exclusive charges on the personalty, and therefore there must be an inquiry as to the condition in that respect of F. A. De la Mothe. But the legacies, except those to the aliens, with the charges of administration and the costs of this suit, are to be borne ratably by the real estate and personal estate, as a charge on the whole thereof as one fund, and the master will apportion the said charges and legacies between the real and personal estates, forming the residue devised by the testator, in proportion to their respective values, for which purpose he will take an account of each of the said estates and their respective produce since the testator's death and set a value on each, reserving, however, the consideration how the proportion to be borne by the real estate shall be raised and to whom it shall be paid.